ANTHONY F. VENTURA, ESQ., SBN 191107
aventura@slaterhersey.com
DANIEL J. MULLER, ESQ., SBN 193396
dmuller@slaterhersey.com
SARAH E. HAMMERSTAD, ESQ., SBN 274595
shammerstad@slaterhersey.com
SLATER HERSEY & LIEBERMAN LLP
160 West Santa Clara Street, Suite 1575
San Jose, California 95113
Telephone: (408) 512-3022
Facsimile: (408) 512-3023

Attorneys for Plaintiff JOSEPH C. MESSINEO, individually
and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH C. MESSINEO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 5:15-CV-02076-BLF<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TRUTH IN LENDING ACT<br><br>[Jury Trial Demanded] |

Plaintiff Joseph C. Messineo ("Plaintiff"), individually and on behalf of all others similarly situated, hereby alleges as follows:

## INTRODUCTION

1.   In the late 1960s and early 1970s, Congress enacted the Truth in Lending Act ("TILA") to, *inter alia*, ensure that home mortgage lenders and servicers promptly and accurately apply borrowers' monthly installment payments to the interest and principal owed in connection with their home mortgage loans. TILA is designed to safeguard borrowers from the imposition of additional interest and fees charged by lenders and servicers when, through no fault of the borrower, a lender or servicer misapplies a borrower's payment.

2.   More specifically, TILA requires mortgage servicers to promptly credit a payment to a borrower's loan account as of the date of receipt. TILA provides that:

-1-

> "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency." 15 U.S.C. § 1639f(a).

3. Regulation Z, which implements TILA, reinforces these prompt crediting requirements. It provides that:

> "Payment processing. In connection with a consumer credit transaction secured by a consumer's principal dwelling:
>
> (i) Periodic payments. No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency." 12 C.F.R. § 1026.36(c)(1)(i).

4. Defendant Ocwen Loan Servicing, LLC ("Ocwen") services home mortgage loans for thousands of borrowers throughout the United States of America. Ocwen has engaged in a pattern and practice of misapplying payments to borrowers' home mortgage loans that were in an interest-only phase on or at some point after November 1, 2013, in violation of its agreements with borrowers and in violation of TILA and its implementing regulations. This pattern and practice results in borrowers paying higher interest and fees over the course of the loan.

5. More specifically, when borrowers make a monthly payment in excess of the amount owed in interest, the remaining balance of the payment should be applied to reduce the principal balance of the loan. Instead, on the date that Ocwen receives a borrower's monthly payment, Ocwen places the funds in a suspense account. Ocwen often waits several days before applying a portion of the payment to the interest-only payment. Ocwen then waits several additional days or months before applying the remainder of the payment to reduce the principal balance of the loan. Similarly, Ocwen failed to timely sweep and apply preexisting suspense balances on such loans to reduce the loans' principal balances, even in months where such borrowers made payments at least equal to the contractual interest charges due on the loans.

FIRST AMENDED CLASS ACTION COMPLAINT

6. Ocwen's pattern and practice of placing borrowers' payments in suspense accounts instead of promptly applying those payments first to interest and then to reduce the principal balance of the borrowers' loans results in Ocwen and its lenders illegally charging and collecting additional interest on the loans.

7. Plaintiff therefore brings this action on behalf of himself and the thousands of other borrowers that are overcharged by Ocwen's pattern and practice of unlawfully collecting additional interest through the misapplication of borrowers' loan payments.

## JURISDICTION AND VENUE

8. Ocwen is subject to personal jurisdiction in the State of California because Ocwen conducts substantial business throughout California, including the County of Santa Clara, by servicing loans for consumers located in this State and County.

9. Pursuant to 28 U.S.C. 1447, venue is proper in this district because a substantial number of the loan agreements referred to herein, including the Note and Deed of Trust, were made and are to be performed in this District.

## THE PARTIES

10. Plaintiff Joseph C. Messineo (hereinafter "Plaintiff" or "Mr. Messineo") is, and at all times mentioned herein was, an individual residing in Santa Clara County, California. Mr. Messineo owns that certain real property located at 903 Lanewood Drive, San Jose, California 95125 (the "Property"). The Property is a single-family dwelling and Mr. Messineo's principal residence.

11. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in West Palm Beach, Florida. Upon information and belief, Ocwen is authorized to, and does, conduct business in the State of California and in the County of Santa Clara by servicing loans for consumers located in this State and County.

## FACTUAL BACKGROUND

12. On or about May 29, 2007, Mr. Messineo obtained a loan for the principal sum of $624,000.00 from GMAC Mortgage, LLC evidenced by a promissory note of the same date (the

"Note"). The Note is secured by a deed of trust (the "Deed of Trust") recorded in first position against the Property.

13. In the section entitled "Uniform Covenants," the Deed of Trust provides:

> "2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note."

14. On or about March 18, 2010, Mr. Messineo entered into an Interest Only Step Rate Reduction Modification Agreement with Deferred Principal, thereby modifying the terms of the Note and deferring the payment of a portion of the principal balance until the maturity of the Note.

15. The Note required Mr. Messineo to make interest-only payments each month.

16. On or about September 1, 2013, Ocwen assumed the obligations of servicing the Note. At that time, the principal balance due and owing in connection with the Note was $515,509.66.

17. For four months, Ocwen correctly applied Mr. Messineo's monthly installment payments on the Note.

18. Then, on or about January 7, 2014, Mr. Messineo sent a payment on the Note in the amount of $2,000.00. In accordance with the provisions in the Deed of Trust, Ocwen was required to apply $1,342.47 of this payment to pay the interest due and $657.53 of this payment to reduce the principal balance of the Note.

19. Instead of so doing, Ocwen placed the $2,000.00 payment in a suspense account. Thereafter, Ocwen applied $1,342.47 toward the interest owed. However, Ocwen retained the remaining $657.53 of the payment in the suspense account and failed to apply those funds to reduce the principal balance.

20. As a result, the following month, the interest-only payment remained at $1,342.47

-4-

FIRST AMENDED CLASS ACTION COMPLAINT

1  when, in fact, the interest payment should have been reduced because Mr. Messineo paid down the
2  principal balance of the Note the previous month. However, because Ocwen failed to apply the
3  remainder of Mr. Messineo's January 1, 2014 payment to reduce the principal balance, Ocwen
4  collected additional interest the following month.

5      21. Additionally, in February 2014, Ocwen charged Mr. Messineo late fees for his
6  January 2014 installment payment despite the fact that Mr. Messineo made a payment for nearly
7  $700 over the interest due for that month. Mr. Messineo contacted Ocwen and spoke with a
8  representative who attributed the problem to the fact that Ocwen had switched Mr. Messineo's
9  loan to a "new computer system" in January 2014. After spending a great deal of time on the
10 phone with Mr. Messineo, the representative informed him that the problem was corrected.

11     22. In March 2014, Mr. Messineo experienced the same issue. Mr. Messineo again
12 contacted Ocwen and spent a great deal of time on the phone trying to address the problem.
13 During that call, Mr. Messineo requested to speak to a supervisor, who informed him that the
14 problem was corrected.

15     23. Despite informing him that the problem had been addressed and corrected, Ocwen
16 continued to misapply Mr. Messineo's payments each month thereafter. And, each month, Mr.
17 Messineo spent countless hours on the phone with Ocwen trying to correct the issue.

18     24. On or about June 1, 2014, Mr. Messineo delivered a written notice of error to
19 Ocwen identifying the errors in the application and accounting of Mr. Messineo's installment
20 payments and demanding that Ocwen promptly correct those errors.

21     25. On or about July 14, 2014, Ocwen responded that it would correct the issue with
22 the misapplication of Mr. Messineo's payments. However, the following month, Ocwen again
23 delivered its monthly mortgage statement to Mr. Messineo reflecting that it had misapplied Mr.
24 Messineo's payment. Moreover, Ocwen has failed to correct the misapplication of Mr.
25 Messineo's payments such that Mr. Messineo continues to overpay Ocwen each month.

26     26. On or about September 17, 2014, Mr. Messineo's attorneys sent a written notice of
27 error again advising Ocwen of the errors in its accountings and explaining the errors in detail. In
28 that letter, Mr. Messineo demanded that Ocwen correct its misapplication of his payments and

-5-

FIRST AMENDED CLASS ACTION COMPLAINT

provide a corrected accounting reflecting that it had done so.

27. On or about October 25, 2014, Ocwen responded by providing Mr. Messineo with an accounting that, again, failed to correct the errors in its misapplication of Mr. Messineo's payments. Instead, the accounting demonstrated how Ocwen has been placing Mr. Messineo's payments into a suspense account and not promptly crediting those payments as required by the Note, the Deed of Trust, and TILA.

28. Since January 1, 2014, and continuing to date, Mr. Messineo has paid in excess of the interest-only payment for each month by sending Ocwen payments for $2,000.00 or $2,500.00. Since that time, Ocwen has engaged in the above-described pattern and practice of placing Mr. Messineo's monthly payments in a suspense account and not promptly and accurately applying them to pay off the interest owed and then to reduce the principal balance of the Note.

29. Ocwen's pattern and practice of placing borrowers' monthly payments in a suspense account and misapplying the payments violates not only the terms of Ocwen's agreements with the borrowers, but it also violates the prompt crediting requirements of TILA. It also leads to borrowers being unlawfully charged additional interest and fees in connection with their loans.

30. To date, Ocwen has failed to adequately correct its past misapplications of Mr. Messineo's payments, or prospectively correct the crediting of his payments, despite that Mr. Messineo has dedicated over a year of his time in multiple attempts to resolve Ocwen's accounting issues.

31. In addition, Ocwen's conduct has put Mr. Messineo's credit at risk due to the reporting of missed payments and unpaid late fees.

## CLASS ALLEGATIONS

32. Plaintiff brings this nationwide class action, pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of all members of the following class:

> All persons residing in the United States of America who are obligors on a loan serviced by Ocwen that is secured by the person's principal dwelling located in the United States or its territories, and which was in an interest-only payment status

-6-

at any time on or after November 1, 2013, <u>and</u> on which a payment did not result in principal curtailment in the month the payment was made even though (a) the payment equaled or exceeded the contractual amount of interest due that month and was made while there was a pre-existing amount being held in suspense by Ocwen with regard to the loan; or (b) the payment exceeded the contractual amount of interest due that month. Excluded from the Class are: (a) Ocwen's board members and executive level officers, including its attorneys; (b) persons who timely and properly exclude themselves from the Class; and (c) all federal judges, their spouses, and persons within the third degree of relationship to them (the "Class").

33. Plaintiff reserves the right to amend the definition of the Class if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

34. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, the Class includes hundreds of thousands of members. While the exact number of members of the Class is unknown to Plaintiff at this time, the identities, names, and addresses of members of the Class are identifiable and ascertainable through Ocwen's records. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure 23(a)(1).

35. Upon certification, notice can be efficiently and effectively accomplished as the identities of the members of the Class can be ascertained from Ocwen's records. Notice of this action may be accomplished by, inter alia, direct first-class mail or email to all members of the Class.

36. Ocwen violated the rights of each member of the Class in an identical manner, such that there are questions of law or fact common to the Class as required by Federal Rule of Civil Procedure 23(a)(2). These questions include, but are not limited to, the following:

   a. Whether Ocwen's pattern and practice of placing borrowers' monthly installment payments in suspense accounts instead of promptly applying the payments to interest and then to reduce the principal balances of the borrowers' loans, or failing to sweep and apply preexisting suspense balances to reduce the principal balances on other loans in months where borrowers made payments at least equal to the contractual interest charges due on the loans,

breached the terms of the mortgage agreements with borrowers;

   b. Whether Ocwen's pattern and practice, as described above, violated the Truth in Lending Act;

   c. Whether Plaintiff and the members of the Class sustained damages and, if so, the appropriate measure of damages; and

   d. Whether Plaintiff and the members of the Class are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of this suit.

37. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

38. Alternatively, this action may be maintained because prosecuting separate actions by individual members of the Class would create a risk of:

   a. Inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Ocwen; and

   b. Adjudications with respect to individual members of the Class that are dispositive of the interests of the other members of the Class not parties to those individual adjudications.

39. Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff and each member of the Class has been subjected to Ocwen's same illegal practices and procedures and has been damaged thereby.

40. Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are adverse to the interests of the members of the Class, and Plaintiff is committed to ensuring that Ocwen does not continue its illegal practices and procedures with respect to him and other members of the Class.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. In all likelihood, the members of the Class cannot afford to seek legal redress individually for the claims alleged herein due to the expense and burden of such litigation. Individualized litigation would also create the potential for inconsistent or contradictory rulings and will significantly increase the delay and expense to all parties and to the Court. By

contrast, a class action allows claims to be heard which may otherwise go unheard because of the expenses of bringing individualized actions, and a class action allows the claims to be heard in one proceeding, overseen by one Court, which presents fewer management difficulties for the parties and for the Court. Finally, absent a class action, Ocwen will likely continue to benefit from their wrongdoing, and the members of the Class will continue to suffer losses.

## FIRST CAUSE OF ACTION

**[Violations of the Truth in Lending Act Against Defendant Ocwen Loan Servicing, LLC]**

42. Plaintiff hereby realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 41, inclusive, of his Complaint, as though fully set forth herein.

43. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class.

44. As set forth above, the Truth in Lending Act ("TILA"), contained in 15 U.S.C. §§ 1601, *et seq.*, and implemented through Regulation Z, contained in 12 C.F.R. §§ 1206, *et seq.*, requires mortgage servicers to "credit a payment to the consumer's loan account as of the date of receipt." 15 U.S.C. § 1639f(a), 12 C.F.R. § 1026.36(c)(1)(i).

45. With respect to Plaintiff and the members of the Class, Ocwen failed to credit these borrowers' payments to their accounts as of the date of receipt and failed to timely sweep and apply the preexisting suspense balances to reduce the principal balances of loans even in months where borrowers made payments at least equal to the contractual interest charges due on the loans. Instead, Ocwen placed the payments in suspense accounts before crediting the payments to interest owed and then to reduce the principal balance of the loans.

46. As a legal and proximate result of Ocwen's failure to promptly credit borrowers' installment payments in violation of TILA, Ocwen charged and collected additional interest from Plaintiff and the members of the Class, such that Plaintiffs and the members of the Class have been damaged in a sum to be determined according to proof at trial.

47. As a result of Ocwen's failure to promptly credit borrowers' installment payments in violation of TILA, Plaintiff has incurred attorneys' fees and costs in bringing this action in a

FIRST AMENDED CLASS ACTION COMPLAINT

1 | sum according to proof at trial. Said fees and costs are recoverable pursuant to 15 U.S.C. § 1640(a)(3).

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## JURY DEMANDED

Plaintiff, individually and on behalf of the Class that he seeks to represent, demands a jury on any issue so triable of right by a jury.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, prays that the Court grant the following:

1. An order determining that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23, that Plaintiff is a proper representative of the Class, that Plaintiff's attorneys be appointed as counsel for the Class, and that Class notice be promptly issued;

2. An award of compensatory damages to Plaintiff and the members of the Class in an amount to be determined according to proof at trial;

3. An award of statutory damages to Plaintiff and the members of the Class in an amount to be determined according to proof at trial;

4. An award of preliminary and permanent injunctive relief against Ocwen as permitted by law or equity;

5. An award of attorneys' fees and other litigation costs reasonably incurred; and

6. An award of any and all relief to which Plaintiff and the members of the Class may be entitled.

Dated: June 22, 2016               SLATER HERSEY & LIEBERMAN LLP


By:   /s/ Daniel J. Muller
ANTHONY F. VENTURA
DANIEL J. MULLER
SARAH E. HAMMERSTAD
Attorneys for Plaintiff JOSEPH C. MESSINEO

FIRST AMENDED CLASS ACTION COMPLAINT