**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOSEPH C. MESSINEO,<br><br>        Plaintiff,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>        Defendant. | Case No.  15-cv-02076-BLF<br><br>**ORDER GRANTING FINAL<br>APPROVAL OF CLASS ACTION<br>SETTLTMENT** |

Alleging that Defendant Ocwen Loan Servicing, LLC ("Ocwen") misapplied borrowers' excess payments to the principal balances of their home mortgage loans, Plaintiff Joseph C. Messineo ("Plaintiff") sued Ocwen for breach of contract, violation of the Truth in Lending Act ("TILA"), and violation of the Real Estate Settlement Procedures Act ("RESPA").  *See generally* Ex. A to Notice of Removal, Messineo v. Ocwen Loan Servicing, LLC, ECF 1-1 (filed May 8, 2015); First Am. Compl., ECF 28.  Two motions are pending in this putative class action for breach of contract and the other statutory violations.  First, the parties jointly move for an order granting final approval to the settlement agreement.  Mot. for Final Settlement Approval, ECF 44, (hereinafter, "Final Approval Mot.").  Second, Plaintiff moves for an award of attorneys' fees, expenses and other relief.  Mot. for Att'y Fees, Expenses, and Service Award, ECF 41 (hereinafter, "Mot. for Att'y Fees").  The Court held a final fairness hearing on January 27, 2017.  For the reasons set forth below, the Court GRANTS the motion for final approval and the motion for attorneys' fees, costs, and incentive award.

## I.    BACKGROUND

### A.    The Parties and Claims

Plaintiff brings this class action against Ocwen, alleging claims for damages and injunctive

United States District Court<br>Northern District of California

relief against Ocwen for failing to properly and timely credit the payments of home mortgage loan borrowers by placing the funds initially into suspense accounts and only later applying the balance of the suspense accounts to interest and principal.. Am. Stip. of Settlement and Release ("Settlement") ¶ 1.1, ECF 38; First Am. Compl. ("FAC") ¶¶ 18-27. According to Plaintiff, Ocwen became the servicer of his promissory note secured by a deed of trust against his property on or about September 1, 2013. FAC ¶¶ 12-16. Plaintiff claims that when he sent a payment amount in excess of interest, Ocwen failed to apply the excess amount to reduce the principal balance of the note in accordance with the provisions in the deed of trust. *Id.* ¶¶ 18-19. Plaintiff alleges that this error persisted after contacting Ocwen multiple times about the issue. *Id.* ¶¶ 21-27. On or about October 25, 2014, Plaintiff received an accounting provided by Ocwen, demonstrating that his payments were placed in a suspense account and were not promptly credited to his balance. *Id.* ¶ 27. Plaintiff contends that investigation has revealed that the cause of such errors was software coding "bugs" inadvertently introduced into Ocwen's loan servicing platform through a vendor's October 2013 software update. Preliminary Approval Order 3.

Plaintiff filed the complaint in this action on April 8, 2015, which Ocwen removed to this Court on May 8, 2015. Compl.; Settlement ¶ 1.1, 1.2. Ocwen answered the complaint soon thereafter. Answr., ECF 7. On November 11, 2015, the parties participated in mediation with the Honorable Ronald Sabraw (Ret.) of JAMS. Settlement ¶ 1.4. The parties were able to reach a preliminary settlement, which the Court approved, conditionally certifying the putative class for settlement purposes only on September 6, 2016. ECF 40. In its order granting Plaintiff' motion for preliminary approval, the Court also (1) appointed Plaintiff Messineo as the certified class representative; (2) approved the parties' proposed notice; (3) set December 23, 2016 as the deadline for opt-out and objection deadline; (4) set December 23, 2016 as the deadline for filing claims; and (5) set the date of the fairness hearing on January 27, 2017. Order Preliminarily Approving Class Action Settlement 5-11, ECF 40 (hereinafter, "Preliminary Approval Order").

Plaintiffs now move for final approval of class action settlement on behalf of:

> all persons who are obligors on a loan serviced by Ocwen that is secured by the person's principal dwelling located in the United States or its territories, and which was in an interest-only payment status at any time

> on or after November 1, 2013, and on which a payment did not result in principal curtailment in the month the payment was made even though (a) the payment equaled or exceeded the contractual amount of interest due that month and was made while there was a pre-existing amount being held in suspense by Ocwen with regard to the loan; or (b) the payment exceeded the contractual amount of interest due that month.

Settlement ¶ 2.1.30.  Excluded from the Settlement Class are: (a) Ocwen's board members and executive level officers; (b) persons who timely and properly exclude themselves from the Settlement Class as provided in the Settlement; and (c) all federal judges, their spouses, and persons within the third degree of relationship to them.  *Id.*

Plaintiff Messineo and Class Counsel have petitioned the Court for approval of a Service Award of $5,000 and Attorneys' Fees and Expenses from the Settlement Fund of $192,002.70, respectively.  Mot. for Att'y Fees.  The Court held a fairness hearing on January 27, 2017.

### B.    Terms of the Agreement

Under the terms of the preliminarily approved settlement agreement, the parties have agreed that Class Members who did not exclude themselves would receive two types of relief. Settlement ¶ 4.2.  The first form of relief is Account Adjustments, which are intended to provide Settlement Class Members who submitted a valid Claim Form an opportunity to receive relief under the Audit and Remediation Protocol equal in amount to any actual damages they may have suffered. *Id.*  ¶¶ 4.3.1-4.3.12.  The second form of relief—Individual Allocations—requires no action by the Settlement Class Members.  Settlement Class Members who did not exclude themselves are entitled to a *pro rata* share of the $600,000 Settlement Fund established by Ocwen, less any Attorneys' Fees and Expenses and Service Award approved by the Court.  *Id.*  ¶¶ 4.4.1-4.4.4).  Such *pro rata* relief averages to about $57.33 per loan.  Final Approval Mot. 7-8.

Ocwen and its vendor also developed a manual procedure to negate the adverse effect of the software "bugs" on incoming payments starting in July 2015, and subsequently developed a series of software "patches" that were introduced into Ocwen's loan servicing platform between February 2016 and May 2016 to correct the effect of the "bugs" on an automated basis. Settlement ¶ 4.2.

In exchange, members of the Settlement Class release any claims arising from any actual

or alleged errors in the application, correction or reporting of any payments that were made by Ocwen (and the Released Parties set forth in ¶ 2.1.27) during the period from November 1, 2013 through the date of entry of the Court's Final Order Judgment in accordance with section 8 of the Settlement. *Id.* ¶ 8 et seq.

## II.   FINAL APPROVAL OF SETTLEMENT AGREEMENT

In line with its previous order granting preliminary approval, the Court now concludes that the proposed settlement is fair, adequate, and reasonable.

### A.   Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also require a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B.   Rule 23(a) and (b) Requirements

A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule . . . designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "pertinent" matters to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

The Court had previously found the settlement class satisfied the requirements for numerosity, commonality, typicality, and adequacy of representation under Rule 23(a) so the discussion will be brief here. Preliminary Approval Order. First, the Settlement Class comprises of 9,374 primary, joint and co-borrowers on 7,030 residential home loans potentially impacted by the allegations raised in this case, and the individual joinder of that many persons would be impracticable. *Id.* at 3. Second, Class Members share common questions of law and fact

pertaining to, for example, whether Ocwen's loan servicing platform contained a flaw during the class period at issue, a flaw that failed to properly apply suspense amounts and excess monthly payment amounts on loans in interest-only payment status on and after November 1, 2013, potentially resulting in violation of the prompt crediting requirements of 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36 ("Regulation Z"). *Id.* Third, the claims of Class Representative Messineo are typical of the class, arising from wrongful crediting of payment by Ocwen's loan servicing platform, caused by software coding "bugs" and affecting the payment status of 7,030 loans on or after November 1, 2013. *Id.* at 4. The representation is also adequate because there are no known conflicts of interest with proposed Class Members and Class Counsel is experienced in class action lawsuits such as this. *Id.* Lastly, questions of law and fact common to members of the class predominate over questions affecting only individuals, as the core issues concern the nature and effect of the software coding "bugs" predominates for purposes of settlement over any individual questions associated with the resolution of those claims, and certification of a Rule 23(b)(3) opt-out settlement class action for purposes of settlement is superior to other available means of adjudicating this dispute. *Id.* The Court is unaware of any changes since the preliminary approval that would alter its analysis. *See G.F. v. Contra Costa Cty.*, No. 16-3667, 2015 WL 4606078, at *11 (N.D. Cal. July 30, 2015).

### C.     Adequacy of Notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court has previously approved the parties' proposed notice procedures for the class. Preliminary Approval Order 8. In the motion for final approval, Plaintiffs state that the parties have carried out this notice plan. Final Approval Mot. 11.

The Settlement Administrator was able identify the names and recently valid addresses of the borrowers on all 7,030 of the loans potentially impacted by the software coding "bugs" at issue, and the parties agreed to provide notice to each of those borrowers by first class mail. Muller Decl. ¶ 4, ECF 45-1; Settlement ¶¶ 5.2.1 –5.2.5; *see also Hunt v. Check Recovery Sys.,*

6

United States District Court
Northern District of California

*Inc.*, No. 05-04993, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) (holding that "delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts.").

The Settlement Administrator received 823 Claim Forms by the Court-approved deadline, which seek relief with respect to 651 of 7,029 loans with the Settlement Class.  Merryman Decl. ¶ 23.  The Administrator has also received one exclusion request, so 7,029 loans remain within the Settlement Class from the initial 7,030 loans.  *Id.* ¶ 22; Final Approval Mot. 7 n.3.

In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have sufficiently provided notice to the settlement Class Members.  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Lundell v. Dell, Inc.*, No. C05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

### D.    Fairness, Adequacy and Reasonableness

#### i.    Strength of Plaintiffs' Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case."  *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, while Plaintiff believes that he would ultimately prevail at trial, there exist substantial obstacles to certification of a litigation class, and proving the merits and damages in this case.  Final Approval Mot. 19.  For example, given that the payment crediting problems were allegedly caused by the software "bugs" inadvertently introduced into Ocwen's loan servicing platform through a vendor's October 2013 software update, Ocwen could prevail on the merits or defeat contested class certification by relying on TILA's *bona fide* error defense, 15 U.S.C. § 1640(c).  *Id.* at 18.  In addition, the terms of many promissory notes with the Settlement Class, including Plaintiff's note, require borrowers wishing to make a partial prepayment of principal to

1   so indicate in writing to Ocwen, thus creating the potential for conflict between the terms of those

2   promissory notes and the terms of the deeds of trust upon which the FAC relies.  Muller Decl. ¶¶

3   16-17.  Even if Plaintiff were to prevail at trial, the Court would have discretion to award no

4   statutory damages at all, or an amount well below TILA's $1,000,000 cap, based on the

5   unintentional nature of the Ocwen's conduct or any other factors in this case.  Final Approval Mot.

6   18.

7          The Court finds that these reasons demonstrate sufficient risk of litigation and this factor

8   weighs in favor of settlement.

9          **ii.   Settlement Amount**

10   "In assessing the consideration obtained by the class members in a class action settlement,

11   'it is the complete package taken as a whole, rather than the individual component parts, that must

12   be examined for overall fairness.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

13   523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628).  "In this regard, it is

14   well-settled law that a proposed settlement may be acceptable even though it amounts to only a

15   fraction of the potential recovery that might be available to the class members at trial."  *Id.* (citing

16   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

17          Based on TILA and Regulation Z, the damages sought by Plaintiff could entitle the Class

18   to receive their actual damages, and statutory damages of "such amount as the court may allow"

19   subject to a maximum cap of $1,000,000. 15 U.S.C. § 1640(a)(2)(B).  Final Approval Mot. 16.

20          Here, the relief provided by the Settlement parallels that available through successful

21   prosecution of the claims of the Settlement Class.  *Id.* at 16.  Any Class Members suffering actual

22   injury to his or her account would receive an account adjustment in the full amount necessary to

23   remediate that injury.  *Id.* at 16-17.  Any Class Members who did not exclude themselves are also

24   entitled to receive a *pro rata* individual allocation to approximate the statutory damages

25   potentially available under the TILA – about $57.33 per loan.  *Id.* at 17.  Accordingly, the

26   settlement provides a share of $57.33 per loan in addition to 100% recovery of any actual injuries.

27   Despite the $1,000,000 maximum amount theoretically available under TILA, Plaintiff's decision

28   to compromise the Settlement Class's statutory damage claims is within the range of

United States District Court
Northern District of California

1    reasonableness, given that the purpose of statutory damages is not to afford compensation but "to

2    deter wrongful conduct." *Cannon v. Cherry Hill Toyota, Inc*., 161 F. Supp. 2d 362, 373 (D.N.J.

3    2001).  As noted above, the Court would also have discretion not to award any statutory damages

4    or to award an amount well below the cap.  *See also Destefano v. Zynga, Inc*., No. 12-cv-04007-

5    JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (approving class settlement providing

6    settlement fund of "14 percent of likely recoverable aggregate damages at trial," and "9.5 percent

7    of those" damages after "deductions for attorneys' fees and costs and administration costs");

8    *Gaudin v. Saxon Mortg. Servs., LLC*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal.

9    Nov. 23, 2015) (approving class settlement providing "13.6% recovery of the maximum possible

10   recoverable damages").  The fact that there are no objections to the settlement further supports the

11   reasonableness of the settlement amount.  Merryman Decl. ¶ 22.

12           Under these circumstances, this factor weighs in favor of approval.

13           **iii.    Extent of Discovery**

14           "In the context of class action settlements, 'formal discovery is not a necessary ticket to the

15   bargaining table' where the parties have sufficient information to make an informed decision

16   about settlement."  *In re Mego Fin. Corp.*, 213 F.3d at 459 (citation omitted).

17           Here, through their extensive pre- and post-mediation confirmatory due diligence efforts,

18   Class Counsel were able to confirm the cause of Ocwen's challenged servicing conduct (the

19   software coding "bugs"); the types of loans susceptible to the effect of the "bugs;" and the

20   particular circumstances under which those "bugs" would produce a payment misapplication.

21   Muller Decl. ¶ 4.  Class Counsel were also able to confirm through sample testing the nature and

22   range of typical injury suffered by actually impacted loans, as well as the effectiveness of

23   corrective software updates introduced by Ocwen and its vendor to mitigate against the effect of

24   the software coding "bugs."  *Id.* at ¶¶ 4, 14.  69.34% of Class Counsel's hours in this case were

25   incurred in pre-suit investigation, as well as in investigation pre- and post-mediation, in advance

26   of reaching the Settlement's final terms with Ocwen.  Final Approval Mot. 20-21; Muller Decl.

27   99.

28           The amount of discovery performed put Class Counsel in a strong position to evaluate this

case and to conclude that settlement was the best way forward.  The Settlement is thus not a "product of uneducated guesswork."  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation).  This factor therefore weighs in favor of approval.

### iv.   Counsel's Experience

Plaintiffs' Lead Class Counsel Daniel Muller also declares the Settlement to be fair, adequate, reasonable, and in the best interest of the Class Members.  Muller Decl. ¶¶ 16-18.  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each parties' expected outcome in litigation.").  Here, Class Counsel have substantial class action and real estate and lending experience, and are intimately familiar with the strengths and weaknesses of this case through the extensive confirmatory due diligence discovery efforts they have conducted over the course of this litigation. Final Approval Mot. 21-22; Muller Decl. ¶¶ 10, 12, 13; Ex. 4 to Muller Decl. 108 (listing professional biography of Daniel Muller).  In light of Class Counsel's considerable experience and their belief that the settlement provides more than adequate benefits to Class Members, this factor weighs in favor of approval.

### v.   Presence of a Governmental Participant

Although no governmental entity is a party to this case, fifty-five separate federal, state and territorial regulators—including the Consumer Finance Protection Bureau and the U.S. Attorney General—were notified of the proposed Settlement pursuant to the notice provisions of Class action Fairness Act.  ECF 36, 39.  Not one of those officials and agencies has raised any objection to the Settlement.

Thus, this factor weighs in favor of approval.  *E.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (non-objection by regulatory officials "favors the settlement"

because "CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures").

### vi.  Reaction of the Class

As noted above, the Settlement Class comprises of 9,374 primary, joint and co-borrowers on the 7,030 residential home loans potentially impacted by the allegations raised in this case. Preliminary Approval Order 3.  The notice procedures were successfully carried out, no objections were filed, and only one person sought to opt out of the Settlement Class.  Merryman Decl. ¶ 22.

823 Claim Forms were submitted to the Settlement Administrator by the Court-approved deadline with respect to 651 unique loans.  *Id.* at ¶ 23.  Out of the 823 claim forms, about 19 Claim Forms were incomplete or pertained to a loan not included in the Class.  *Id.*  There were also about 153 instances of duplicate Claim forms submitted for the same loan.  *Id.*  Accordingly, the number of unique loans that are the subject of complete Claim Forms is 651.  *Id.*  Taking into account the 7,030 residential loans, that results in a claims rate of 9.26%—a "higher than average" participation rate for consumer class settlements.  Final Approval Mot. 23.

In light of the 9.26% claim rate, one opt-out, and zero objections, this factor strongly favors final approval.  *Cf. In re Linkedin User Privacy Litig.*, 309 F.R.D. at 589 (approving settlement with claim rate of 5.93% based on 47,336 claims received from the 798,000 class members) *Moore v. Verizon Commc'ns Inc.*, No. 09-1823, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving class action settlement with 3% claim rate); *see also Churchill Vill.*, 361 F.3d at 577 (finding no abuse of discretion where district court, among other things, reviewed list of 500 opt-outs in a class of 90,000 Class Members); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (granting final approval of settlement where 16 out of 329 class members (4.86%) requested exclusion).

### E.  The *Bluetooth* Factors

Although the *Churchill* factors favor settlement, consideration of those factors alone is insufficient.  *See In re Bluetooth*, 654 F.3d at 946.  Where, as here, the parties reach a settlement

United States District Court
Northern District of California

prior to class certification, courts must examine the settlement with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citations omitted).  "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947.  Signs of subtle collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotations marks and citations omitted).

Here, the Court finds that there is no indication of a collusive deal.  The first factor is not present. The Settlement provides that *all* Settlement Class Members are entitled to receive monetary relief in the form of Individual Allocations of the Settlement Fund and any Class Member who submitted a valid Claim Form also would receive Account Adjustments equaling 100% of any economic impact cause by the software "bugs."  Against the backdrop of these terms, Class Counsel have sought Attorneys' Fees and Expenses and a Service Award that collectively represent just under one-third of the Settlement Fund alone, without reference to the Account Adjustment relief offered to the Settlement Class.  Final Approval Mot. 14; Settlement ¶ 9.1; *e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (finding that the Ninth Circuit sets a "benchmark" fee award at 25% of the recovery obtained).

The proposed settlement was also the product of arm's-length, non-collusive negotiations, with the assistance of a JAMS neutral and former California state judge, Ronald Sabraw, who conducted the mediation sessions.  Final Approval Mot. 13-14.  *Ellsworth v. U.S. Bank, N.A.*, No.

12-02506, 2015 WL 1883911, at *4 (N.D. Cal. Apr. 23, 2015); *G. F. v. Contra Costa Cty.*, No. 13-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

As to the second factor, the settlement agreement does not contain a clear sailing provision. The agreement states that "Ocwen reserves the right to oppose any petition by Class Counsel for Attorneys' Fees and Expenses that Ocwen deems to be unreasonable in nature or amount." Settlement ¶ 9.1; *id.* ¶ 9.3 (same with respect to service award).   *See In re Bluetooth*, 654 F.3d at 949 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).

As to the third factor, there is also no kicker arrangement whereby "unpaid attorneys' fees" would revert to the defendant.  Final Approval Mot. 15.  Any Attorneys' Fees and Expenses awarded by the Court are payable from the Settlement Fund itself (not separately) and that any downward adjustment by the Court in the requested amount of such fees and expenses will not affect the Settlement but instead remain in the Settlement Fund for further distribution to the Settlement Class Members.  Settlement ¶¶ 9.1, 9.5.  Accordingly, no portion of the Settlement Fund will revert to Ocwen.

Similarly, the $5,000 service award to Plaintiffs Messineo is not indicative of a collusive deal, as "$5,000 is presumptively reasonable" in the Ninth Circuit.  *Smith v. Am. Greetings Corp.*, No. 14-2577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

Accordingly, the Court concludes that the Settlement does not raise an inference of collusion that warrants invalidation of the class settlement as a whole.

## III.    ATTORNEYS' FEES AND COSTS

### A.    Legal Standard

#### i.    Fees and Costs

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either

United States District Court
Northern District of California

13

the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942.

### ii. Costs

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citation omitted). To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-5778, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B. Analysis

### i. Attorneys' Fees

Class Counsel moves the Court for $174,000 in attorneys' fees, representing 29 percent of the Settlement Fund. Mot. for Att'y Fees 2. Based on Exhibit 3, showing individual billing entries, the rate ranges from $375 per hour to $475 per hour. Ex. 3 to Muller Decl. Class Counsel argues that this award is reasonable because they have spent more than 400 hours working on

United States District Court
Northern District of California

behalf of the Class, which at hourly billing rates for similarly experienced lawyers in the San Francisco Bay Area, amounts to a lodestar value of $179,601.25.  Exs. 2, 3 to Muller Decl.

After careful review of Class Counsel's declarations and filings, the Court concludes that awarding $174,000 in attorneys' fees to Class Counsel is reasonable.  Plaintiff requests an upward adjustment from the 25% benchmark to 29% because the actual time spent by Counsel securing a Settlement in which the $600,000 in automatic relief represents only a portion of the relief offered to the Settlement Class.  Mot. for Att'y Fees 2; Settlement ¶¶ 4.3-4.4  Through the Claims Process, Settlement Class Members can also obtain Account Adjustments to remediate any actual damages they may have suffered and such relief is not encompassed by or within the Settlement Fund. Mot. for Att'y Fees 2.  This is also a rare class action settlement which provides complete relief for all alleged harms.  *Id.* at 5; *Omnivision Techs.*, 559 F. Supp. 2d at 1046 (total award of 9% of possible damages was "a substantial achievement").

Further, the Court has also crosschecked this award against the lodestar recovery and the requested amount actually reflects a slight reduction in Class Counsel's lodestar amount.  Muller Decl. ¶ 13; Mot. for Att'y Fees 2, 9-10.  Considering the excellent results achieved, and the lodestar cross-check, the Court finds that the requested fee award falls within the range of reasonableness.  *See In re HPL Technologies, Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 914-15 (N.D. Cal. 2005); s*ee also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund).  Accordingly, Class Counsel's motion for $174,000 in attorneys' fees is GRANTED.

### ii.   Costs

Plaintiff also seeks reimbursement of $18,002.66 in expenses, as agreed upon in the Settlement Agreement.  Mot. for Att'y Fees 10-11; Muller Decl. ¶ 17; Settlement ¶¶ 9.1-9.2. Expenses resulted from filing and service fees, mediation fees, damages expert, and mortgage industry expert; and do not include photocopying, word processing, and parking.  Muller Decl. ¶ 17.  Upon review, the Court finds the expenses are reasonable and GRANTS the motion for $18,002.66 in expenses.

United States District Court
Northern District of California

United States District Court
Northern District of California

## IV.   SERVICE AWARD

### A.   Legal Standard

Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).  Courts evaluate incentive or service awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (citation and internal quotations and alterations omitted).  Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

### B.   Analysis

Plaintiff requests a service award of $5,000.  Mot. for Att'y Fees 11-13; Settlement ¶ 9.3.  Plaintiff believes this award is reasonable in light of the contributions that Plaintiff Messineo has made on behalf of Class Members.  Mot. for Att'y Fees 12.  Mr. Messineo assisted Class Counsel with the investigation of the claims and the preparation of the Complaint.  *Id.*  He also provided the relevant documents necessary to draft the Complaint and he worked with Class Counsel throughout the case.  Muller Decl. ¶ 18.  Without Mr. Messineo's efforts, this case would not have been possible and would not have been successful.  Mr. Messineo actively participated in case development and settlement negotiations, as well as a day-long mediation session.  *Id.*; Mot. for Att'y Fees 12.  Moreover, Mr. Messineo, in agreeing to bring this action, formally agreed to accept the responsibilities of representing the interests of all Class Members, and to assume risks and potential costs that were not specifically agreed to by other Class Members in this case.  *Id.*

Absent a service award, the certified Class Representatives will receive no benefit from the settlement for his protracted and dedicated efforts greater than that received by other qualifying Class Members.  *Id.*

16

1     To determine the reasonableness of a service award, courts consider the proportionality

2  between the incentive award and the range of class members' settlement awards.  *Dyer v. Wells*

3  *Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014).  In light of Lead Plaintiff's service to

4  the class and amount of incentive award, the Court finds that a service award of $5,000 each is

5  reasonable.  *E.g.*, *Harris v. Vector Marketing Corp.*, No. C-08-5198, 2012 WL 381202, at *7

6  (N.D. Cal. Feb. 6, 2012) (collecting cases holding that an award of $5,000 has been found to be

7  presumptively reasonable in this Circuit).  Further, the service award makes up only less than one

8  percent, a "tiny fraction of the common fund," justifying the amount to be awarded.  *Van Vranken*

9  *v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); Mot. for Att'y Fees 12-13.

10  **V.     ORDER**

11     For the foregoing reasons, the Court hereby ORDERS as follows:

12     1.     The Class is certified for settlement purposes only.

13     2.     Final Approval is GRANTED as to the parties' Settlement Agreement (ECF 38),

14  which is fair, adequate, and reasonable in all its terms within the meaning of Fed. R.  Civ. P. 23(e),

15  and the Settlement Agreement shall be implemented and consummated according to its terms.

16     3.     The notice of this class action settlement provided and given to the Class

17  constitutes due, adequate and sufficient notice, and meets the requirements of due process and any

18  applicable laws.

19     4.     The Settlement Administrator shall pay to Class Counsel, the sum of $174,000.00

20  as attorneys' fees from the Settlement Fund in accordance with the terms of the Settlement

21  Agreement.

22     7.     The Settlement Administrator shall pay to Class Counsel the sum of $18,002.66 as

23  reimbursement for their litigation expenses in this action from the Settlement Fund in accordance

24  with the terms of the Settlement Agreement.

25     8.     The Settlement Administrator shall pay to certified Class Representative Joseph

26  Messineo the sum of $5,000 as service award in accordance with the terms of the Settlement

27  Agreement.

28     10.     By means of this Final Approval Order, the Court enters Final Judgment as

United States District Court
Northern District of California

between Plaintiff, the Class (except properly excluded members of the Class) and Defendant.

11.     Without affecting the finality of this judgment in any way, the Court retains continuing jurisdiction of this action, including, but not limited to, (a) implementation, enforcement, and administration of the Settlement Agreement, including all releases in connection therewith; (b) resolution of any disputes concerning settlement class membership or entitlement to benefits under the terms of the Settlement Agreement; and (c) all parties hereto, including members of the Class, for purposes of enforcing and administering the Settlement Agreement and this action generally until each and every act agreed to be performed by the parties has been performed pursuant to the Settlement Agreement.

12.     This action is dismissed with prejudice as against Defendant.

13.     The parties shall bear their own costs and attorneys' fees except as expressly otherwise provided in the Settlement Agreement and this order.

**IT IS SO ORDERED.**

Dated: February 24, 2017

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

18